**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 15-cv-01550-MSK-NYW

VINCENT MACIEYOVSKI,

      **Plaintiff,**

v.

CITY AND COUNTY OF DENVER, DEPARTMENT OF GENERAL SERVICES,

      **Defendant.**

_____

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**
_____

      **THIS MATTER** comes before the Court pursuant to Mr. Macieyovski's Motion for

Summary Judgment **(# 52)**, and the Defendant's ("Denver") Response **(# 59)**; and Denver's

Motion for Summary Judgment **(# 53)**, Mr. Macieyovski's response **(# 60)**, and Denver's reply

**(# 61)**.

## FACTS

      The Court briefly summarizes the pertinent facts here and elaborates as necessary in its

analysis, considering the evidence in the light most favorable to Mr. Macieyovski.

      Mr. Macieyovski, who is of Polish heritage, was employed for many years by Denver as

a Master Trades Worker, responsible for maintaining and repairing HVAC systems in buildings

owned by the City and County of Denver.  During February 2014, Denver conducted an audit of

the Mr. Macieyovski's work orders.  Denver randomly selected 10 work orders on jobs Mr.

Macieyovski had recently completed, and upon examining the orders and the work performed,

concluded that Mr. Macieyovski had failed to complete the tasks listed in six of the work orders,

1

and had taken excessive amounts of time to complete the work on others.  Denver began

termination proceedings against Mr. Macieyovski that month and formally terminated his

employment on April 22, 2014.

Mr. Macieyovski's *pro se*[1]Complaint (**# 1**), alleges two claims: (i) that his termination

constitutes discrimination on the basis of his national origin, in violation of Title VII, 42 U.S.C.

§ 2000e *et seq.*;  and (ii) that his termination constituted retaliation for his past protected activity

– namely, at least 5 prior EEOC charges and three employment-related lawsuits against Denver -

-- again in violation of Title VII.

Both parties have now moved for summary judgment.

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if

no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and

a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs

what facts are material and what issues must be determined.  It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

---

[1]	Due to his *pro se* status, the Court construes Mr. Macieyovski's pleadings liberally.
*Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

2

for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

If the movant has the burden of proof on a claim or defense, the movant must establish

every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P.

56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a

genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine

dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and  enters

judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required.  If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of

law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment.  "Because the determination of

whether there is a genuine dispute as to a material factual issue turns upon who has the burden of

proof, the standard of proof and whether adequate evidence has been submitted to support a

*prima facie* case or to establish a genuine dispute as to material fact, cross motions must be

evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

### B.  Denver's Motion

The Court begins with Denver's motion.

#### 1.  Discrimination on the basis of national origin

As with all claims of disparate treatment under Title VII, Mr. Macieyovski bears the initial burden of establishing a *prima facie* case of national origin discrimination.  To do so, he must demonstrate that: (i) he is a member of a protected class; (ii) that he possessed the minimum objective qualifications for his position; (iii) that he suffered an adverse employment action; and (iv) the adverse action arose in circumstances giving rise to an inference of discrimination.  If Mr. Macieyovski carries this burden, then Denver has the burden to articulate a legitimate, non-discriminatory reason for the adverse action. If Denver makes the showing, then Mr. Macieyovski bears the ultimate burden of demonstrating that Denver's proffered reason is a pretext for national origin discrimination. *Chung v. El Paso School Dist.*, 659 Fed.Appx. 953, 955-56 (10th Cir. 2016); *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

Mr. Macieyovski's ability to establish the first three elements of the *prima facie* case is evident: his Polish ancestry places him in a protected class based on his national origin, his tenure in the position demonstrates his facial qualifications, and his termination is clearly an

adverse employment action.[2]  The fourth element – circumstances giving rise to an inference of national origin discrimination – is more difficult.

This element can be established in a number of ways, most commonly by showing actions or remarks by decisionmakers that reflect (in this case) anti-Polish animus, preferential treatment given to similarly-situated non-Polish employees, or by showing that Denver sought non-Polish applicants to fill Mr. Macieyovski's position after his termination.  *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005).  Mr. Macieyovski points to no particular anti-Polish utterances from his supervisors.  Although he vaguely suggests that he "will demonstrate at trial that some non-Polish employees were not able to perform the required work" yet were not similarly disciplined, he does not identify any such individuals or provide evidence that their work performance (or lack thereof) were similar to his.  Because Mr. Macieyovski bears the burden of proof at the *prima facie* case stage, he is obligated to come forward with admissible evidence to support his contentions and cannot rely on conclusory promises to produce evidence at some point in the future.  *See Schlect v. Lockheed Martin Corp.*, 626 Fed.Appx. 775, 778 (10th Cir. 2015).  Neither has Mr. Macieyovski clearly asserted – much less demonstrated through

---

[2]     Mr. Macieyovski's summary judgment response his own summary judgment motion are somewhat rambling and unfocused, but arguably present the contention that he was subjected to additional adverse employment actions, including harassment by his supervisors, loss of a promotion, and disciplinary suspensions, among others.

It is unclear whether Mr. Macieyovski both exhausted those contentions administratively and timely commenced this suit upon that exhaustion, as neither the pertinent EEOC charges nor Right to Sue letters are part of the record before the Court.  However, Mr. Macieyovski's Complaint unambiguously asserts claims related solely to his termination, making no mention of any claims premised upon any other alleged adverse actions.  Similarly, Denver's summary judgment motion is directed solely at Mr. Macieyovski's termination, and does not address any other adverse action.  In such circumstances, the Court is inclined to hold Mr. Macieyovski to his pleadings and consider him to be asserting his discrimination and retaliation claims only as they relate to his termination.  Nevertheless, as discussed below, the Court also briefly addresses a claim by Mr. Macieyovski relating to an alleged failure to promote that Mr. Macieyovski raises in his own summary judgment motion.

evidence – that Denver sought applicants for his position following his termination. Accordingly, the Court would grant summary judgment to Denver on Mr. Macieyovski's national origin discrimination claim due to Mr. Macieyovski's failure to demonstrate circumstances giving rise to an inference of anti-Polish discrimination.

Even if the Court were to allow Mr. Macieyovski's disparate treatment claim to proceed beyond the *prima facie* case stage, Denver would still be entitled to summary judgment at the pretext stage. Denver has articulated a legitimate, non-discriminatory reason for Mr. Macieyovski's termination: that a February 2014 audit of his work revealed poor performance on numerous job assignments. In response, Mr. Macieyovski does not offer evidence that objectively demonstrates that this reason is false. Indeed, it is somewhat unclear whether Mr. Macieyovski even disputes that he failed to perform tasks he was assigned. He seems to acknowledge that he failed to perform work on certain "fan-coil units," but states (without citation to supporting evidence) that "[t]he accusations are due to chronic mislabeling of the fan-coils units and their locations" – seemingly suggesting that he failed to perform work on the units because they were mislabeled or difficult to find. Mr. Maciyovski goes on to acknowledge that, in a prior audit of his work performance, "labeling issues [were identified] as [Denver's] concern to be resolved" and that, in the interim, "staff has been addressing this." This statement seems to suggest that Mr. Macieyovski was aware that there were unlabeled fan-coil units, and that they were nevertheless within his sphere of duties. Mr. Macieyovski later declares the process of maintaining these fan-coil units as "a menial activity of marginal benefit," seemingly confirming that he did indeed fail to complete these tasks.

Apart from Mr. Macieyovski's failure to show that Denver's proffered reason for his termination is false, Mr. Macieyovski's avoids any contentions whatsoever that would also

suggest that his termination was the result of anti-Polish animus.  Instead, Mr. Macieyovski

primary argument in opposition to Denver's summary judgment motion is that Mr. Macieyovski

and his supervisors disagreed as to what his work priorities should have been: his supervisors

prioritized preventative maintenance and "improv[ing] productivity" – an approach Mr.

Macieyovski declares a "futile and costly endeavor" -- whereas Mr. Macieyovski believed that

his efforts should instead have been directed towards improving energy efficiency.  This

disagreement leads Mr. Macieyovski to accuse his supervisors of all manner of generalized

incompetence, of violating Civil Service rules; and of generally being "part of the conspiracy

[of] collecting public money for jobs they did not and could not perform."  Nowhere, however,

does he offer evidence that his supervisors harbored a particular anti-Polish bias.

Title VII does not require employers to make employment decisions that are fair, careful,

or wise, or even serve as a guarantee that employers will follow Civil Service Laws, criminal

laws, or other statutes and practices.  Title VII merely requires that employers not base

employment decisions on prohibited considerations of race, sex, religion, or national origin.  If,

as Mr. Macieyovski repeatedly asserts, Denver terminated him because his supervisors were

incompetent, or "bullies," or that they disliked his complaining to the civil service authorities,

Title VII offers him no remedy.  Although Title VII does offer him a remedy if he was

terminated because of his Polish ancestry, he has not come forward with any evidence that would

indicate that this occurred.

Accordingly, Denver is entitled to summary judgment on Mr. Macieyovski's claim for

national origin discrimination.

2.  Retaliation

To establish a claim for retaliation under Title VII, Mr. Macieyovski must first establish a *prima facie* case by demonstrating: (i) that he engaged in conduct protected by Title VII; (ii) that he suffered an adverse employment action; and (iii) that there is some causal connection between that protected conduct and the adverse action.  If Mr. Macieyovski carries that burden, Denver must come forward with a legitimate, non-retaliatory reason for the adverse action, and Mr. Macieyovski bears the ultimate burden of demonstrating that the proffered reason is false and a pretext for retaliation.  *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016).

The Court begins by examining whether Mr. Macieyovski can show that he engaged in conduct protected by Title VII.  A wide array of statutes protect employees against retaliation for invoking their particular terms, and Title VII is no different.  Title VII protects employees who "oppose" conduct that they believe (in good faith) constitutes unlawful discrimination on the basis of sex, race, religion, or national origin, and employees who "participate" in the enforcement of Title VII by filing non-frivolous charges of discrimination on such grounds. *Petersen v. Utah Dept. of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002); *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011).

It is undisputed that Mr. Macieyovksi was a prolific filer of EEOC charges, internal complaints, and lawsuits against Denver over the span of his employment.  Because, as discussed below, Mr. Macieyovski relies primarily on temporal proximity to establish retaliation, only those protected activities that occurred closely in time to his actual termination warrant greater examination here.  Thus, the Court focuses on protected acts that Mr. Macieyovski took in close temporal proximity to his termination.  Although that termination formally occurred on April 22, 2014, it is undisputed that the formal action was merely the culmination of a lengthy, termination-focused disciplinary process that began in February 2014.  Thus, the Court examines

Mr. Macieyovski's retaliation claim from the perspective of both February 2014 and April 22, 2014.

Denver alleges that, before those dates, the most recent EEOC charge Mr. Macieyovski filed was on or about July 9, 2013, some nine months before the termination. This period is far too remote to support an inference of a causal connection to his termination. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Denver acknowledges that Mr. Macieyovski sent a lengthy e-mail complaint to Cary Kennedy, Denver's Chief Finance Officer, on March 11, 2014. However, as Denver points out, that e-mail complains of "mismanagement and waste" by his supervisors in violation of "Fiscal Accountability Rules," and makes no mention whatsoever of alleged employment discrimination premised upon race, sex, religion, or national origin. Thus, such a complaint is not conduct protected by Title VII.[3] *Petersen*, 301 F.3d at 1188.

Mr. Macieyovski's response identifies his having filed an "EEO compaint CSA 17-14" on April 4, 2014, just a few days prior to his termination, but he does not attach a copy or even describe this particular complaint. Denver's reply brief attaches what appears to be a "Career Service Hearing Office Appeal to hearing Officer" by Mr. Macieyovski, dated April 3, 2014. The Court will assume that this appeal document is the "EEO complaint" Mr. Macieyovski refers to.

The document appears to reflect Mr. Macieyovski desiring to appeal from his "failure to be promoted" on March 25, 2014. Directed to Denver's Career Service Authority, the document reflects that Mr. Macieyovski believes that he did not receive the promotion because of

_____

[3]     The Court expresses no opinion as to whether Mr. Macieyovski's March 11, 2014 letter would trigger anti-retaliation protections of some statute <u>other</u> than Title VII. It is sufficient to observe that Mr. Macieyovski's claims in this Court arise solely under Title VII.

"whistleblower" activities – that is, a complaint of "abuse of official authority," presumably by his superiors, as well as "discrimination or harassment based on national origin [and] EEOC activities."

Denver points out that the Career Service Authority responded to this complaint with a request that Mr. Macieyovski provide three categories of information, including (as category #3), "a summary of the basis for your discrimination claim, including your national origin, the adverse action taken against you, and the reason(s) you believe the Agency was motivated by your national origin in taking that action." Mr. Macieyovski responded on April 12, 2014 with a two-paragraph letter that stated, in response to the request for information about his discrimination claim, "The possible discrimination based on National Origin had been established in CSA 55-13. The #2, #3 issues [i.e. those relating to his whistleblower and discrimination complaints] are not clear at this time." Mr. Macieyovski stated that he had been told that he was qualified for the promotion in December 2013, but was never interviewed. "This," he wrote, "is the issue to be determined in this selection, which is unclear now in #2, #3. Was it capricious and discriminatory or in retaliation for the issues I'd disclosed in CSA 55-13, and other EEO activities during my employment[?]" The contents of "CSA 55-13" that Mr. Macieyovki references are not identified in either party's filings, although the Career Services Authority's denial of Mr. Macieyovski's CSA 17-14 appeal on April 16, 2014 notes that CSA 55-13 "established in a previous appeal that his national origin is Polish, and thus that he is a member of a group protected from discrimination." This suggests that CSA 55-13 was a prior filing by Mr. Macieyovski that did indeed relate to matters protected by Title VII.

In deference to Mr. Macieyovski's status as non-movant, the Court construes the record in the light most favorable to him. Thus, the Court assumes that his April 4, 2014 appeal to the

Career Services Authority, coupled with his April 12, 2014 response, included complaints of national origin discrimination and were thus protected activity under Title VII.  Although it is unclear whether Mr. Macieyovski's allegations of discrimination and retaliation in these documents were reasonable and in good faith –as is necessary before they would trigger Title VII's anti-retaliation protections -- the Court will assume, for purposes of this ruling,  that they were.  *See Davis v. James*, 597 Fed.Appx. 983, 987 (10th Cir. 2015).  Thus, the Court assumes that Mr. Macieyovski engaged in protected conduct by making a complaint to the Career Services Authority on April 12, 2014, 10 days prior to his termination.

That timing is sufficiently close to the adverse action of Mr. Macieyovski's termination to satisfy the causal connection element of the *prima facie* case.  *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999) (finding 1½ month period between protected conduct and adverse action sufficient to infer causal connection, but 3 month delay was not).  Thus, Mr. Macieyovski has established a *prima facie* case of retaliation.

The burden then shifts to Denver to articulate a legitimate, non-retaliatory reason for Mr. Macieyovski's termination. Denver has done so by pointing to the audit of Mr. Macieyovski's work orders in February 2014 that revealed his poor performance.  The burden then shifts back to Mr. Macieyovski to show that Denver's reason is false and that retaliation is the real reason for his termination.

For many of the same reasons discussed above, Mr. Macieyovski has not shown that he can carry that burden.  He does not dispute Denver's findings that he failed to perform the work he was directed to do, and thus, he has failed to show Denver's reason for his termination to be false.  More importantly, Mr. Macieyovski does not dispute that his termination flowed from the

February 2014 work audit and that the audit commenced long before his April 2014 protected conduct.

Indeed, the record reflects that the disciplinary process that led to Mr. Macieyovski's termination was well underway long before April 4, 2014.  For example, on March 28, 2014, Denver wrote to Mr. Macieyovski, stating: "This is official notification that disciplinary action is being contemplated against you for alleged misconduct," including "neglect of duty," "falsifying records," and "failing to do assigned work."  Thus, the record shows that Denver was already preparing to discipline Mr. Macieyovski for the defects exposed in the work audit before Mr. Macieyovski complained about discrimination to the Career Services Authority.  Notably, Mr. Macieyovski has not offered any evidence that the "disciplinary action" that Denver was contemplating in March 2014 was something short of termination (such that Mr. Macieyovski could argue that his April 2014 protected conduct caused Denver to impose harsher discipline than they were otherwise considering as retaliation for his Career Services Complaint).  To the contrary, the record reflects that Mr. Macieyovski's performance had been the subject of ongoing criticism by his supervisors for many months immediately preceding the February 2014 investigation.  He has spent most of the last half of 2013 under a "Performance Improvement Plan" and had already been suspended twice in 2013 for other disciplinary infractions.  In such circumstances, it should come as no surprise that the discipline Denver was contemplating as early as March 2014 was termination.

Accordingly, the Court finds that Mr. Macieyovski has not demonstrated a genuine dispute requiring trial as to the question of whether Denver's proffered reason for his termination is a pretext for unlawful retaliation.  Denver is entitled to summary judgment on that claim.

### C.  Mr. Macieyovski's motion

Because the Court grants summary judgment to Denver on both of Mr. Macieyovski's claims, the Court need not entertain Mr. Macieyovski's motion seeking summary judgment in his favor.  Nevertheless, the Court has fully reviewed that motion and finds nothing therein that would alter the analysis above.

For purposes of completeness, however, the Court notes that Mr. Macieyovski's motion focuses on complaints that his supervisors were engaged in a host of misconduct entirely unrelated to Title VII, such as violating accounting standards, the American Recovery and Reinvestment Act, the Sarbanes-Oxley Act, and many others.  As noted above, Title VII's protection against retaliation is not a "catch-all" that protects an employee from retaliation of any possible kind; it only protects an employee from retaliation based on complaints specifically related to Title VII.  Thus, Mr. Macieyovski's allegations of these other forms of alleged misconduct by his supervisors are completely irrelevant to the analysis of his Title VII claims here.

Mr. Macieyovski's motion raises one argument not squarely presented in his summary judgment response - that Mr. Macieyovski was subjected to another instance of national origin discrimination when he was passed over for a promotion in March 2014.   As the footnote above explains, this claim is not reasonably found in Mr. Macieyovski's Complaint, nor is it clear that Mr. Macieyovski has properly exhausted this claim. But assuming such hurdles are or could be jumped, the Court sees nothing in Mr. Macieyovski's tendered evidence that would permit this claim to proceed to trial.

The promotion in question, to the position of Facility Administrative Officer, was given to an individual named Kevin O'Neil.  Mr. Macieyovski asserts that "his qualifications were clearly superior to the qualifications of [Mr. O'Neil]," and goes on to recite his own

qualifications (bachelors and masters degrees, certain technical licenses, and supervisory experience) and those of Mr. O'Neil (a bachelors degree and managerial experience, but not technical experience or licenses, and a personnel file "generously showered" with "accolades for [a] job well done" by his supervisor).  Mr. Macieyovski does not identify the particular job requirements for the position of Facility Administrative Officer, but Denver's response does, including the job posting describing the position as a managerial one to "provide leadership and management of several maintenance programs."  Although the job posting lists experience with building HVAC and automation systems as a desired skill, it does not require the successful applicant to hold any technical licenses.

As discussed above, to establish a *prima facie* case of national origin discrimination based on a failure to promote, Mr. Macieyovski would have to show that Mr. O'Neil's selection for the promotion over him occurred in circumstances giving rise to an inference of national origin discrimination; Mr. Macieyovski would then be required to show that Denver's proffered reasons for selecting Mr. O'Neil – better qualifications – were pretextual.

Notably, Title VII's prohibition against national origin discrimination does not suffice as an invitation to courts to second-guess hiring decisions, particularly subjective evaluations by an employer of the relative qualifications of two candidates who otherwise satisfy all of the job description's objective requirements.  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1198-1200 (10th Cir. 2008).  Even unwise or unfair hiring decisions by employers do not give rise to Title VII liability, unless the plaintiff can show that the employer did not even honestly believe the reasons it gave for selecting the successful candidate.  *Johnson v. Weld County*, 594 F.3d 1202, 1211 (10th Cir. 2010).  Thus, to show that Denver's "claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if

mistakenly) held belief, [Mr. Macieyovski] must come forward with facts showing an

'overwhelming' disparity in qualifications" between himself and Mr. O'Neil, such that no

reasonable hiring manager could have viewed Mr. O'Neil as being better qualified.  *Id.*

Mr. Maciyovksi has not carried that burden.  Although Mr. O'Neil might not necessarily

have Mr. Macieyovski's technical experience with building systems, the job posting also favors

candidates with "experience in research and/or policy writing," experience that Mr. O'Neil had

but Mr. Macieyovski's prior job title did not manifestly encompass.[4] Perhaps more importantly,

at the time he was not selected for the promotion in March 2014, Mr. Macieyovski had recently

been released from a 6-month Performance Improvement Plan designed to correct poor work

performance, had experienced at least two prior disciplinary suspensions, and was undergoing an

audit of his work orders that had revealed uncompleted and delayed work.  By contrast, by Mr.

Macieyovski's own admission, Mr. O'Neil's employment history was "showered" with

"accolades."  In such circumstances, Mr. Macieyovksi has not come forward with evidence that

would demonstrate that his qualifications were "overwhelmingly" superior to Mr. O'Neil's such

that he could demonstrate that Denver's selection of Mr. O'Neil for the position of Facility

Administrative Officer could be seen to be a pretext for national origin discrimination.  It is

enough, for purposes of Mr. Macieyovski's motion then, to deny summary judgment in his favor

on any failure to promote claim.[5]

---

[4]     A narrative portion of Mr. Macieyovski's application for the opening referenced his
"thorough understanding of regulatory environment as well as policy development and
implementation" but did not elaborate.  Mr. Macieyovski's own motion and supporting exhibits
do not offer any clear explication of his research or policy experience.

[5]     As noted above, it is abundantly clear that Mr. Macieyovski's Complaint, even when
granted liberal construction consistent with his *pro se* status, asserts only discriminatory
<u>termination</u> and makes no reference whatsoever to a discriminatory <u>failure to promote</u>.  The mere
fact that Mr. Macieyovski chose to address a promotion claim in his own summary judgment

## **CONCLUSION**

For the foregoing reasons, Mr. Macieyovski's Motion for Summary Judgment **(# 52)** is

**DENIED** and Denver's Motion for Summary Judgment **(# 53)** is **GRANTED**.  The Clerk of the

Court shall enter judgment in favor of Denver on all claims in this action.

Dated this 6th day of March, 2017.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge

---

motion does not constitute a constructive amendment of that Complaint, particularly where
Denver's response to that motion expressly objects to Mr. Macieyovski raising a brand-new
claim at this late date.